

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
December 15, 2020 01:09 PM
       AFTAB PUREVAL
      Clerk of Courts
    Hamilton County, Ohio
   CONFIRMATION 1015759
```

**GARY BERRY**  **A 2004358**

**vs.**

**THE KROGER CO**

## FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

## PAGES FILED: 11

EFR200



VERIFY RECORD

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| GARY BERRY<br>5115 Hawaiian Terrance Apt. 10<br>Cincinnati, OH 45223<br><br>    Plaintiff,<br><br>    v.<br><br>THE KROGER CO.<br>c/o Corporation Service Company (Stat. Agent)<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>  **Serve Also:**<br>  THE KROGER CO.<br>  1034 Depot St.<br>  Cincinnati, OH 45204<br><br>  -and-<br><br>  THE KROGER CO.<br>  1212 State Ave.<br>  Cincinnati, OH 45204<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR**<br>**DAMAGES AND**<br>**INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff GARY BERRY by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES

1. Berry is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant THE KROGER CO., ("Kroger") is a domestic-incorporated, for profit company that conducts business throughout the state. The relevant location of the events and omissions of this Complaint took place was 1212 State Ave., Cincinnati, OH 45204 and 1034 Depot St., Cincinnati, OH 45204 (which are effectively the same address).

3. Kroger is, and was at all times hereinafter mentioned, Berry's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e and R.C. § 4112.01(A)(2).

## JURISDICTION & VENUE

4. All of the material events alleged in this Complaint occurred in Hamilton County, Ohio.

5. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).

6. Venue is proper pursuant to Civ. R. 3(B)(1), (2), (3), (6), and/or (7).

7. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

8. Within 180 days of the conduct alleged below, Berry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2020-01115) against Defendant ("EEOC Charge").

9. On or about September 19, 2020 the EEOC issued and mailed a Dismissal and Notice of Rights letter to Berry regarding the EEOC Charge.

10. Berry received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

11. Berry has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

12. Berry has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

13. Berry is a former employee of Kroger.

14. At all times noted herein, Berry was qualified for his position with Kroger.

15. At all times noted herein, Berry could fully perform the essential functions of his job, with or without a reasonable accommodation.

16. Berry is African American, placing him in a protected class for his race.

17. Berry worked for Kroger as warehouse support staff from April 24, 2017 until January 2020, and a warehouse receiver from January 2020 until Kroger terminated Berry's employment on or about May 26, 2020.

18. When Berry was hired on April 24, 2017, Berry joined a union.

19. Through the union, Berry put up a bid for the warehouse receiver position and received it in January 2020.

20. Berry's issues started after he accepted the warehouse receiver position.

21. On or about March 12, 2020, Berry received his first ever write-up from warehouse supervisor, Mark Walker, for incorrectly labeling the expiration date on a shipment of eggs.

22. Berry was contacted by Walker and Courtney Wynn, union secretary, to explain the write up and offer Berry the opportunity to grieve the claim.

23. Berry initially refused, agreeing that if he had mislabeled the eggs, he should be disciplined as to prevent the mistake in the future.

24. However, after Berry fully read the procedures, he re-approached Wynn and asked to grieve the write-up because three superiors did not double-check the shipments as required by the policy. Those superiors were not disciplined for failing to double-check the eggs.

25. On or around March 17, 2020, the grievance process began.

26. On or around March 18, 2020 or March 19, 2020, union vice president James Culbert accompanied Berry to a meeting with Angela Santee, HR Director.

27. At this meeting, Santee explained that Berry's write-up would be rescinded so long as Berry had no more problems with mislabeling eggs for six consecutive months.

28. On or around March 20, 2020, Berry came to work like normal and was approached by Christopher Gibson.

29. Gibson told Berry to "be silent," and sternly explained that he had been letting a lot of Berry's actions "slide," but now that preference was ending. He was told not to respond to the statement.

30. Disparately, this did not happen to Berry's similarly-situated Caucasian coworkers.

31. With a previously signed leave-early slip, Berry left work early on March 20, 2020.

32. Later that evening, Berry received a telephone call from Culbert explaining that Gibson had put Berry on the schedule for Saturday, March 21, 2020 on third shift.

33. Berry came into work on March 21, 2020 to satisfy Gibson's schedule change.

34. Berry recognized that Gibson's actions in scheduling him for additional 3rd shift work was in violation of his collective bargaining agreement.

35. Disparately, this did not happen to Berry's similarly situated Caucasian coworkers.

36. At this point, Berry filed a charge with the Equal Employment Opportunity Commission against Kroger, naming Gibson as the primary bad actor.

37. On or around April 23, 2020, Berry was notified that the holiday pay he had already received was being taken away.

38. Defendant failed to follow the union contract without notifying Berry, creating a situation where Berry no longer qualified for holiday pay and then retroactively took the money back.

39. Berry grieved the Defendant's decision to change the contract and take away his holiday pay.

40. On or around April 28, 2020, Berry received two write-ups: (1) for improperly labeling items and not inspecting them for damage, and (2) for no following proper egg procedures.

41. Berry refused to sign both write-ups as he had followed proper procedures in both incidents.

42. Disparately, Berry's similarly situated Caucasian coworkers were not given false discipline.

43. Berry grieved both write-ups via his union.

44. On or around May 10, 2020 Berry's colleague, Edo Kamboba, demonstrated the proper way to label items and inspect them for damage, and the proper egg procedures.

45. Kamboba's demonstration showed that Berry was acting appropriately, and Berry had photographic evidence of the demonstration.

46. On or around May 10, 2020 both grievances from April 28, 2020 were denied.

47. On or around May 22, 2020, Berry attended a grievance hearing to address the April 28 write-ups, the holiday pay dispute, and the violation of his collective bargaining agreement.

48. As a result of the hearing, Berry lost in regard to the holiday pay dispute and the collective bargaining agreement violation but won in regard to the write-ups from April 28, 2020.

49. On or around May 25, 2020, Berry received two more write-ups: (1) for leaving his work area without permission and for conducting union business on company property, and (2) for an incomplete job assignment pertaining to Berry neglecting to let another warehouse lead know that an item needed to go into a refrigerator.

50. The item that Berry was written up for did not require refrigeration.

51. Additionally, the other warehouse lead who was similarly written up for the same situation had his writeup cleared.

52. Disparately, this adverse employment action did not happen to Berry's similarly situated Caucasian coworkers.

53. On or around May 22, 2020, Berry had his final grievance hearing regarding the May 25, 2020 write-ups and lost both grievances.

54. Defendant subsequently terminated Berry's employment.

55. Defendant's termination of Berry's employment was an adverse employment action against him.

56. Defendant's purported reason(s) for Berry's employment termination was pretextual.

57. Defendant actually terminated Berry's employment discriminatorily against his race and/or in retaliation against his protected complaints.

58. As a result of the above, Berry has suffered damages.

## COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.*

59. Berry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

60. Berry is African-American, and thus is in a protected class for his race.

61. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

62. Defendant treated Berry differently than other similarly situated employees based upon his race.

63. Defendant's termination of Berry's employment was an adverse employment action against him.

64. Defendant's purported reason(s) for Berry's employment termination was pretextual.

65. Defendant actually terminated Berry's employment due to his race.

66. Defendant violated R.C. § 4112 *et seq*. by terminating Berry's employment because of his race.

67. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Berry differently from other similarly situated employees outside his protected class.

68. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Berry's race.

69. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Berry's race.

70. Berry incurred emotional distress damages as a result of Defendant's conduct described herein.

71. As a direct and proximate result of Defendant's acts and omissions, Berry has suffered and will continue to suffer damages.

**COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII**

72. Berry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. Berry is African-American, and thus is in a protected class for his race.

74. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

75. Defendant treated Berry differently than other similarly situated employees based upon his race.

7

76. Defendant's termination of Berry's employment was an adverse employment action against him.

77. Defendant's purported reason for Berry's employment termination was pretextual.

78. Defendant actually terminated Berry's employment due to his race.

79. Defendant violated Title VII by terminating Berry's employment because of his race.

80. Defendant violated Title VII by treating Berry differently from other similarly situated employees outside his protected class.

81. Defendant violated Title VII by applying its employment policies in a disparate manner based on Berry's race.

82. Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on Berry's race.

83. Berry incurred emotional distress damages as a result of Defendant's conduct described herein.

84. As a direct and proximate result of Defendant's acts and omissions, Berry has suffered and will continue to suffer damages.

## COUNT III: RETALIATION

85. Berry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

86. As a result of the Defendant's discriminatory conduct described above, Berry complained of the discrimination, harassment, and disparate treatment he was experiencing by grieving the write-ups he received.

87. Subsequent to Berry's complaints to management about harassment, bullying, and disparate treatment toward him, Defendant took adverse employment actions against Berry, including terminating his employment.

88. Defendant's actions were retaliatory in nature based on Berry's opposition to the unlawful discriminatory conduct.

89. Pursuant to R.C. § 4112 *et seq*. and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

90. As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Berry, he has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Berry demands from Defendant the following:

a) Issue a permanent injunction:

    i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

9

      v.     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge his personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Berry for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Berry's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

                                    Respectfully submitted,

                                      /s/ Matthew Bruce
                                Matthew G. Bruce (0083769)
                                    Trial Attorney
                                Evan R. McFarland (0096953)
                                **THE SPITZ LAW FIRM**
                                11260 Chester Road, Suite 825
                                Cincinnati, OH 45246
                                Phone: (216) 291-0244 x173
                                Fax:   (216) 291-5744
                                Email: Matthew.Bruce@SpitzLawFirm.com
                                Email: Evan.McFarland@SpitzLawFirm.com

                                *Attorneys for Plaintiff GARY BERRY*

## **JURY DEMAND**

Plaintiff GARY BERRY demands a trial by jury by the maximum number of jurors permitted.

                                                    /s/ Matthew Bruce
                                                  Matthew G. Bruce (0083769)

11